UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| J.T.H. and H.D.H., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:20 CV 222 ACL |
| | ) | |
| MISSOURI DEPARTMENT OF | ) | |
| SOCIAL SERVICES, CHILDREN'S | ) | |
| DIVISION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Complaint of Plaintiffs asserting various civil
rights and state law claims against Defendants Missouri Department of Social Services ("DSS"),
Children's Division ("CD") and Spring Cook, arising out of a CD investigation concerning
Plaintiffs' minor son.  Presently pending before the Court is Defendants' Motion to Dismiss.
(Doc. 11.)  Also pending are Plaintiffs' Motion for Preliminary Injunction (Doc. 13) and Motion
for Leave to File a Sur-Response in Opposition to Defendants' Motion to Dismiss (Doc. 44).

I.      **Background**

A.      **The Complaint**

The Complaint alleges that Plaintiff's minor son was sexually abused by Scott County
Sheriff's Deputy Brandon Cook in May 2018.  Cook was a colleague of the Plaintiff Father, who
was also a Scott County deputy.  Cook groomed the minor for sexual abuse through various
social activities and a smartphone app called Grindr.  The sexual abuse took place in Cook's
marked patrol car while Cook was in uniform.  Shortly after the incident, Cook was arrested by
the Missouri State Highway Patrol ("MSHP") for second-degree statutory sodomy.

1

In September 2018, Plaintiff Father, through counsel and as a next friend of his minor son, asserted a claim against Scott County for the incident with Cook.

On November 7, 2018, Spring Cook, a CD director/circuit manager, appeared at Plaintiffs' family home with a deputy juvenile officer ("JO") and MSHP troopers reporting that there had been a hotline call regarding Plaintiffs' minor son.  Plaintiffs state that Spring Cook routinely works "hand-in-glove" with certain Scott County Sheriff's Deputies.  (Doc. 1 at 4-5.) Cook and the troopers interviewed Plaintiffs' minor son at that time, and on three other occasions—November 9, 2018, November 10, 2018, and November 13, 2018.  Plaintiffs then refused further home visits by Defendant Cook.

By letter from Plaintiffs' counsel dated November 23, 2018, and by telephone call from counsel, Plaintiffs requested that Spring Cook recuse herself from investigating the parents and refer the investigation to a CD office in another county.  Plaintiffs allege that such recusal is customary for matters involving local law enforcement families, "because of the reality that local law enforcement routinely works hand-in-glove with the local county Children's Division office."  (Doc. 1 at 6.)  Plaintiffs declined a referral to SEMO-NASV for a physical examination of the son on the basis that there had been no recent assault, and any such inspection would traumatize the boy.  Cook also proposed that the parents submit a parenting plan.

On January 7, 2019, Cook made a preliminary finding under a preponderance of evidence standard of parental child neglect.  Cook's finding was based on the following three incidents: (1) Brandon Cook's sexual abuse of the son; (2) the son's Facebook messaging about sex and alleged sexual abuse by another adult, a local Tae Kwan Do instructor ("Instructor"); upon learning of the abuse, Plaintiff Father confronted the Instructor while Plaintiffs' daughter and her friend were nearby in a car, the Instructor responded by assaulting Plaintiff Father; Plaintiff

Father de-escalated the situation by not responding with physical force and retreating; Plaintiff Father did not report the assault; and (3) a benign, age-appropriate out-of-state date the minor son went on with his mother's permission.  Cook focused her findings of neglect on the fact that Plaintiffs allowed the minor son—who was sixteen at the time—usage of the internet on his iPhone, and permitted him to drive a vehicle across state lines to go on an age-appropriate date.

Cook referred the matter to a JO, who conducted his own independent investigation and found there was "no evidence" to support an allegation of parental neglect.  *Id.* at 10.  The JO's finding had no effect on Cook's finding.

Plaintiffs timely filed an administrative appeal of Cook's finding.  As part of the administrative review triggered by Plaintiffs' appeal, Cook reviewed her own investigatory work and upheld her finding of neglect.

Plaintiffs next sought review by the CD's Child Abuse and Neglect Review Board ("CANRB").  On August 27, 2019, the CANRB conducted a hearing in Jefferson City, Missouri, in which Spring Cook participated by telephone and without counsel, and Plaintiffs appeared in person and with individual counsel.  Two days later, the CANRB issued letters holding that the findings of neglect were unsubstantiated as to each parent under a preponderance of the evidence standard.

Neither Plaintiff was listed on the Missouri Child Abuse and Neglect Registry ("Central Registry").

Plaintiffs allege they were subject to an investigation by the FBI concerning "substantially similar charges" regarding their minor son in March 2020.  (Doc. 1 at p. 16.) Plaintiffs believe that two FBI agents visited Spring Cook's office.  One of the FBI agents then questioned Plaintiffs' daughter at length about the minor son's sexuality and sexual conduct.

Plaintiffs' daughter was told that she was the only member of the family who was known by "the authorities" to be cooperative.  *Id.* at 17.  The FBI never followed-up with any other family members, and eventually closed the investigation.  Plaintiffs allege that Spring Cook contacted the FBI in frustration that the CANRB did not substantiate her earlier allegation and/or in retaliation against Plaintiffs.

The Complaint set forth five counts.  In Count I, Plaintiffs request prospective, declaratory relief against CD for violating Plaintiffs' procedural due process rights.  Count II seeks to enjoin CD from enforcing allegedly unconstitutional procedures in resolving reports of abuse made to the State of Missouri's Child Abuse and Neglect Hotline.  In Count III, Plaintiffs allege Defendant Spring Cook, in her individual capacity, retaliated against Plaintiffs for making allegations against Scott County and its Sheriff by investigating and making a finding of child neglect against Plaintiffs in violation of their rights under the First Amendment to the United States Constitution.  Count IV alleges that Spring Cook, in her individual capacity, violated Plaintiffs' right to procedural and substantive due process under the Fourteenth Amendment.  In Count V, Plaintiffs assert a state law malicious prosecution claim against Spring Cook for investigating and making findings against Plaintiffs for child neglect.

### B.    Missouri Child Abuse and Neglect Report Procedure

The Court's summary of the State procedure was taken primarily from Defendants' Memorandum in Support of their Motion to Dismiss (Doc. 12 at 7-23), and is provided for background.

CD is a Division within DSS charged by law with "establish[ing] a child protection system for the entire state" of Missouri.  § 210.109.1 RSMo.  Reports of child abuse or neglect are called in to the central Child Abuse Hotline and recorded in the information system.  §

4

210.145.1 RSMo.  After the Central Abuse Hotline receives the report and determines that there is enough information to merit an investigation or family assessment, the report and any relevant information is transmitted to the local CD office.  § 210.145.2 RSMo.  Reports of child abuse or neglect that, if true, would constitute a suspected violation of a crime under chapter 566 if the victim is a child less than eighteen years of age merit a CD investigation and trigger CD's obligation to report to law enforcement.  § 210.145.3 RSMo.

The local office then determines if the case should be handled as an investigation or family assessment and services, and commence that process within certain time frames. §§ 210.145.3, 210.145.8 RSMo.; 13 CSR 35-31.025.  Local CD can decide to handle a case as an assessment rather than investigation by assessing the needs of the family and offering services; however, if CD determines that the child is at risk of abuse or neglect and the family declines to accept voluntary services, CD may commence an investigation.  §§ 210.145.15, 210.145.16 RSMo.  If local CD decides to handle the case as an investigation, CD is required to contact and work with law enforcement in all aspects of the investigation.  § 210.145.7 RSMo.  If the local office decides to proceed, a timely investigation must be commenced.  § 210.145.8 RSMo.; 13 CSR 35-31.020(6).  In most cases, this includes directly observing the child within 24-72 hours. *Id.*  Section 210.145.10 RSMo defines the scope of the investigation as follows:

> The investigation shall include but not be limited to the nature, extent, and cause of the abuse or neglect; the identity and age of the person responsible for the abuse or neglect; the names and conditions of other children in the home, if any; the home environment and the relationship of the subject child to the parents or other persons responsible for the child's care; any indications or incidents of physical violence against any other household or family member; and other pertinent data.

Once CD has completed the investigation and decided whether to make a finding of child abuse or neglect, it must update the information system and give timely written notice of the

decision to the alleged perpetrator and the child's parents.  § 210.152.2 RSMo.  If CD determines that a preponderance of the evidence supports a finding of child abuse or neglect it will issue a preliminary finding, copies of which are sent to the alleged perpetrator and the child's parents.  § 210.152.2 RSMo.; 13 CSR 35-31.025(2).  CD will not list the individual as a perpetrator of child abuse or neglect in the Central Registry until the alleged perpetrator has been given notice and opportunity for administrative review.  13 CSR 35-31.025.

The Central Registry is "a registry of persons where the division has found probable cause to believe prior to August 28, 2004, or by a preponderance of the evidence after August 28, 2004, or a court has substantiated through court adjudication that the individual has committed child abuse or neglect or the person has pled guilty or has been found guilty of a crime pursuant to section 565.020, 565.021, 565.023, 565.024, 565.050, 566.030, 566.060, or 567.050 if the victim is a child less than eighteen years of age, or any other crime pursuant to chapter 566 if the victim is a child less than eighteen years of age and the perpetrator is twenty-one years of age or older, a crime under section 568.020, 568.030, 568.045, 568.050, 568.060, 568.080*, 568.090*, 573.023, 573.025, 573.035, 573.037, 573.040, 573.200, or 573.205, or an attempt to commit any such crimes.  Any persons placed on the registry prior to August 28, 2004, shall remain on the registry for the duration of time required by section 210.152."  § 210.110(3) RSMo.

When notified that CD has issued a preliminary finding of child abuse or neglect, the alleged perpetrator has three options.  First, do nothing and waive his or her right to administrative or judicial review; in which event, CD will list the individual in the Central Registry.  Second, if they disagree, he or she may request administrative review of the decision. 13 CSR 35-31.025 and §210.152.4 RSMo.  In these cases, CD will not list the individual in the Central Registry unless and until the CANRB upholds the CD's findings.  When an alleged

perpetrator requests CANRB review, the CANRB's decision is the CD's decision, and the preliminary findings of the investigator or Circuit Manager is not.  13 CSR 35-31.025(11). Third, the alleged perpetrator can waive administrative review and file a Petition for Circuit Court de novo review.  § 536.100 RSMo.  In these cases, CD will list the alleged perpetrator's name in the Central Registry, because the individual has waived his or her right to administrative review.  *Id.*  The individual, however, can ask the court to stay CD's decision and stay Central Registry listing pending resolution of the judicial review.  § 536.120 RSMo.30.

When CD receives a request for administrative review, the local circuit manager or her designee will review the report to decide to uphold or reverse the finding.  13 CSR 35-31.025(2)(B).  If the Circuit Manager reverses the finding, the matter is concluded.  13 CSR 35-31.025(2)(C).  If the Circuit Manager upholds the finding, the case goes to the CANRB.  *Id.*

The CANRB is a nine-member board within DSS responsible for providing an independent review of child abuse and neglect determinations where the alleged perpetrator is aggrieved by CD's preliminary finding.  § 210.153.1 RSMo.  Members are appointed by the Governor with the advice and consent of the Senate.  § 210.153 RSMo.  CANRB members include various professionals with training or expertise in child abuse/neglect, and may include parents, foster parents or grandparents.  § 210.153.2 RSMo.

In CANRB proceedings, alleged perpetrators have a right to counsel, and to appear personally or to submit written arguments.  § 210.153.4(2) RSMo.  They may present witnesses § 210.153.4(2). 13 CSR 35- 31.025(8)(F).  Testimony is not given under oath, nor does the law provide for compulsory attendance or cross-examination of witnesses.  *See* § 210.153 and 13 CSR 35-31.025.  The rules of evidence do not apply, and hearsay evidence can be considered. *Id*.  The CD and the alleged perpetrator may submit written materials and exhibits for

consideration.  13 CSR 35-31.025(9)(A)(4).  There is no right to formal discovery, but the

Circuit Manager will provide a copy of the investigation, including all records provided to the

CANRB, with the exception of "confidential information or other information that could

jeopardize child safety."  13 CSR 35-31.025(9)(A)(3).  At the hearing, the child's representative,

the CD, and the alleged perpetrator are given 20 minutes (if requested) to present their case.  13

CSR 35-31.025(10).  The CANRB may grant additional time to a party.  *Id.*  The CANRB will

notify CD, the alleged perpetrator and the child's representative of its decision within five

business days.  13 CSR 35-31.025(12).  The CANRB's decision is the CD's final decision.  13

CSR 35- 31.025(11).  An alleged perpetrator who is aggrieved by a CANRB decision has a right

to file a Petition in State Circuit Court for de novo judicial review.  §§ 210.152.4 and 210.153

RSMo.

## II.    Standard

Federal Rule of Civil Procedure 12(b)(1) provides for a motion to dismiss for lack of

subject matter jurisdiction.  The party asserting federal jurisdiction bears the burden to prove

federal subject matter jurisdiction exists.  *V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev.*, 235

F.3d 1109, 1112 (8th Cir. 2000).

Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim.  Fed. R. Civ.

P. 12(b)(6).  The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a

complaint so as to eliminate those actions "which are fatally flawed in their legal premises and

deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."

*Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490

U.S. 319, 326-27 (1989)).  "To survive a motion to dismiss, a claim must be facially plausible,

meaning that the 'factual content ... allows the court to draw the reasonable inference that the

8

defendant is liable for the misconduct alleged.'" *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

### III.     Defendants' Motion to Dismiss

Defendants first move to dismiss Counts I and II for lack of standing. Defendants next argue that Counts I, II, and IV fail to state a claim, because Missouri law and procedures comply with constitutional due process requirements, and Cook did not violate Plaintiffs' right to substantive due process. They argue that Count II also fails because it does not state a claim for injunctive relief. Defendants contend that Count III fails because it does not identify a protected activity, and because Cook had sufficient facts to raise a reasonable suspicion to support her finding. Defendants argue Counts III and IV are barred by the doctrines of absolute, qualified, and official immunities. Finally, they contend that Count V fails to state a claim for malicious prosecution and is barred by absolute and official immunity.

On the same day Defendants filed their Motion to Dismiss, Plaintiffs moved for a preliminary injunction to enjoin CD during the pendency of this litigation from enforcing the Central Registry statutory and regulatory process without requiring the CD to grant accused parties the following procedural due process rights: (1) right to obtain all evidence, including disclosure of CD's entire file, and to compel production of all evidence if necessary, with some process to compel production; (2) right not to be charged money for disclosure of CD's evidence; and (3) right to cross-examine CD's witnesses where there are conflicting narratives of

the truth, in light of an alleged perpetrator's interest in avoiding "stigma plus" placement on the Central Registry.   (Doc. 13.)

### A.  Standing

Defendants first argue that Counts I and II fail because Plaintiffs lack standing in that no actual controversy exists between the parties.

 "The irreducible constitutional minimum of standing is that a plaintiff show (1) an injury-in-fact that (2) is fairly ... traceable to the challenged action of the defendant and (3) is likely ... to be redressed by a favorable decision in court." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (cleaned up) (quoting *ABF Freight Sys. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011) ).  "A plaintiff has suffered an injury-in-fact if he has experienced 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'"  *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ).

Plaintiffs must establish standing for each type of remedy sought, including declaratory and injunctive relief.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 185 (2000); *see Mosby v. Ligon,* 418 F.3d 927, 932-33 (8th Cir.2005).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on jurisdiction.  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  *Id.* (internal citations omitted).  "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards."  *Id.* (internal citation omitted).

Here, although Defendants do not specify, it appears they are alleging a facial attack.  As such, the Court accords Plaintiffs' complaint Rule 12(b)(6) protection by "accepting as true all facts alleged in the complaint."  *See Trooien v. Mansour*, 608 F.3d 1020, 1026 (8th Cir. 2010).  The Court will "consider[ ] only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint.'"  *Cox v. Mortgage Elec. Registration Sys., Inc.*, 685 F.3d 663, 668 (8th Cir. 2012) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003)).

### 1.  Count I

Count I seeks a declaratory judgment that *Jamison v. State*, 218 S.W.3d 399 (Mo. 2007) is "no longer good law and it deprives the Plaintiffs of adequate procedural due process before a 'stigma plus' deprivation by being placed on the Child Abuse & Neglect Registry."  (Doc. 1 at 25.)  Plaintiffs request that the Court issue a declaratory judgment enjoining CD from "enforcing unconstitutional procedures as to pre-CANRB hearing discovery and hearing procedure."  *Id.*

In *Jamison*, the plaintiffs—nurses at a child care center—were accused of child abuse and neglect.  The plaintiffs had been listed in the Central Registry *before* the CANRB hearing.  They argued that the Missouri Child Abuse Act was unconstitutional, facially and as applied, under the due process clauses of the United States and Missouri constitutions.  The plaintiffs, like here, argued that due process required a full evidentiary, pre-deprivation hearing on the record, with the right to subpoena witnesses, conduct discovery and cross-examine witnesses under oath before their names were entered in the Central Registry.  The Court found that the listing of the plaintiffs' names on the Central Registry implicated a liberty interest for the purposes of a due process challenge, and that these rights were violated when their names were listed prior to the

CANRB hearing.  The Court, however, held that Missouri's informal, CANRB procedures met procedural due process requirements.  *Jamison*, 218 S.W.3d at 412-415.

Defendants argue that no current, actual controversy exists between the parties because the CANRB found in Plaintiffs' favor and Plaintiffs were not listed in the Central Registry. They contend that, as a result, entry of a declaratory judgment cannot put Plaintiffs in a better position and would constitute an impermissible advisory opinion.

Plaintiffs respond that they suffered concrete and particularized injuries when Cook found them to be neglectful of their minor son and continued to prosecute them at the CANRB upon appeal, even though this finding was later overturned.  They state that Plaintiff Father's law enforcement license and Plaintiff Mother's desire to return to teaching constitute actual interests that would be impaired by being placed on the Central Registry.  Plaintiffs further argue that they have demonstrated a well-founded fear that findings of neglect by Spring Cook and the CD will continue.  They cite to the following allegations in support:  they have had a subsequent call out by the FBI on substantially similar allegations; they have faced call outs by the same CD office as to alleged social media content by their thirteen-year-old daughter; and a different sheriff's deputy attempted to "friend" Parents' sixteen-year-old daughter on social media.

The Declaratory Judgment Act provides that, in "a case of actual controversy" within its jurisdiction, a federal court may issue declaratory relief with regard to the rights and/or legal relations of the parties.  28 U.S.C. § 2201.  "The Declaratory Judgment Act [does] not extend federal court jurisdiction beyond the recognized boundaries of justiciability, but only 'enlarge[s] the range of remedies available.'"  *Pub. Water Supply Dist. No. 10 of Cass Cnty., Mo. v. City of Peculiar, Mo.*, 345 F.3d 570, 572 (8th Cir. 2003).  In other words, the availability of relief under

the Declaratory Judgment Act "presupposes the existence of a judicially remediable

right." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

The undersigned finds that Plaintiffs have failed to demonstrate an injury in fact.  They

claim that they were injured when each parent "was found by Spring Cook to be neglectful of

their minor son, and she continued to prosecute them at the CANRB upon administrative

appeal."  (Doc. 36 at p. 5.)  In other words, Plaintiffs claim Spring Cook's initial finding

constitutes an injury in fact.  The decision of the CANRB, not the initial finding of Spring Cook,

is the final finding of the CD.  It is undisputed, that, unlike the plaintiffs in *Jamison*, Plaintiffs

were never placed on the Central Registry.  Under Count I Plaintiffs allege that the state

procedures are unconstitutional in that they deprive Plaintiffs of due process "*by being placed on

the Child Abuse & Neglect Registry*."  (Doc. 1 at p. 25) (emphasis added).  As such, Plaintiffs

own pleadings reveal that the claimed injury is placement on the Registry, which did not occur in

this case.

Further, to the extent Plaintiffs allege Cook's preliminary finding was their injury in fact,

the pleadings do not show that this injury could be redressed by a favorable decision of this

Court.  Plaintiffs seek a judgment that *Jamison* is no longer good law, and that Missouri's

procedures for a pre-deprivation hearing at the CANRB violate procedural due process.  They

also request that the Court enjoin CD from enforcing unconstitutional procedures.  Because the

CANRB found in Plaintiffs' favor and reversed the preliminary finding of Cook, Plaintiffs will

be in no better position if the Court grants the requested relief.  Thus, Cook's preliminary finding

does not meet the requirements for establishing standing.

Plaintiffs next attempt to establish an injury in fact by arguing they have demonstrated a

well-founded fear that findings of neglect will occur in the future.   They refer to alleged

instances occurring after the CANRB decision, including the FBI investigation and subsequent call outs related to Plaintiffs' other children.

Defendants, relying upon *Mitchell v Dakota County Social Services*, 959 F.3d 887 (8th Cir. 2020), argue that Plaintiffs' argument that they could face another investigation in the future it too speculative to establish standing. They further argue that Plaintiffs' allegations of subsequent call outs related to their other children are not alleged in the Complaint and are unsubstantiated.

Plaintiffs seeking prospective relief based on past actions must show "a real and immediate threat that [they] would again suffer similar injury in the future." *Mosby*, 418 F.3d at 933 (quoting *Park v. Forest Serv. of the United States*, 205 F.3d 1034, 1037 (8th Cir. 2000) (internal quotations and brackets omitted)); *see O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). There are also certain "prudential limitations" on standing and the exercise of federal-court jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). As relevant here and in *Mosby*, one such limitation is a rule that parties "generally must assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights or interests of third parties." *Mosby*, 418 F.3d at 933 (quoting *Warth*, 422 U.S. at 499).

In *Mitchell*, the plaintiffs, who were New Jersey residents that briefly resided in Minnesota, brought suit challenging the constitutionality of various Minnesota child protection statutes following the removal of children from their father. When the *Mitchell* plaintiffs filed suit, the children had already been returned by the Minnesota officials and the Plaintiffs had returned to New Jersey. In addition to the children's father, an association of parents affected by Minnesota's child-protection services—"Stop Child Protection Services from Legal Kidnapping" ("Association")—was a party plaintiff. The Association argued it had standing because its

members lived in Minnesota, had had experiences with Minnesota's child-protection services, and could face child abuse investigations in the future. The Court held that "Mitchell's or his children's speculative return to Minnesota is insufficient to show a real and immediate threat of repeat injury. Without an injury in fact, Mitchell and his children lack standing…The speculative future action alleged in the plaintiffs' complaint is not enough to confer standing…to challenge the facial constitutionality of the Minnesota statue." *Id.* (citations omitted). The Court further found that the Association lacked standing, noting that the "speculative future action alleged in the plaintiffs' complaint is not enough to confer standing on any individual member of the association." *Id.*

Plaintiffs argue *Mitchell* is distinguishable because, unlike the *Mitchell* Plaintiffs, they continue to live within Spring Cook's jurisdiction, and they have undergone investigations subsequent to the CANRB decision.

Although it is true that the facts of *Michell* are distinguishable in that Plaintiffs in this action remain Missouri residents, the reasoning still applies to preclude standing in this case. The *Mitchell* Plaintiffs' lack of residency in Minnesota was not the only factor considered by the Court. This is demonstrated by the Court's treatment of the Association Plaintiff. The members of the Association *were* Minnesota residents, alleged they had suffered an injury by Minnesota's child protection system in the past, and argued they could again face child abuse investigations. The Court rejected this argument, finding the allegations of potential future action too speculative to establish standing. Thus, *Mitchell* illustrates that plaintiffs do not have standing to challenge the constitutionality of child protection statutes unless they make a showing of a "*real and immediate* threat of repeat injury." *Id.* at 896 (emphasis added). *See also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (An allegation of "future injury may suffice if the

threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur") (internal citations omitted).

The only allegations in the Complaint regarding the possibility of future injury are those related to the subsequent FBI investigation.  Plaintiffs allege "on inference," that Spring Cook contacted the FBI in frustration that the CANRB did not substantiate her earlier allegation. (Doc. 1 at 17.)  Plaintiffs summarize that the FBI "received a hotline call, made an investigation, and then closed the investigation for lack of probable cause for the allegations." *Id.*  By Plaintiffs' own admission, therefore, the FBI did not make a finding of neglect and has closed its investigation.  Although Plaintiffs infer that Spring Cook contacted the FBI, Plaintiffs do not allege that Cook or CD opened another investigation.  As such, these allegations do not demonstrate a real and immediate threat of an injury caused by Cook or CD.

In an Affidavit attached to Plaintiffs' Motion for Preliminary Injunction (Doc. 13-2), Plaintiff Father alleges that Plaintiffs have also faced recent subsequent call outs by the same CD office in Sikeston as to alleged social media content of their thirteen-year-old daughter; and a different sheriff's deputy attempted to "friend" their sixteen-year-old daughter on social media. Defendants argue that these allegations raise facts outside the scope of the Complaint and should not be considered.  In the event the Court considers these new facts, Defendants have filed six Affidavits with supporting materials in opposition.

Even assuming that this evidence can be considered, it does not aid Plaintiffs in establishing standing.  The Court will not, therefore, consider Defendants' Affidavits.  First, Plaintiffs do not allege that Spring Cook or CD is currently investigating Plaintiffs for allegations of child abuse or neglect.  *See Mosby,* 418 F.3d at 933-34; *cf. O'Shea* 414 U.S. at 497 ("[A]ttempting to anticipate whether and when these respondents will be charged with crime and

16

will be made to [be subject to the challenged conduct] takes us into the area of speculation and conjecture.").

Second, even if Plaintiffs could show a CD investigation were pending, Plaintiffs would still lack standing.  As previously discussed, Plaintiffs' alleged injury of reputational damage could not be redressed by a favorable decision of this Court, because the requested relief would put Plaintiffs in no better position in light of the fact the CANRB found in Plaintiffs' favor.  For the same reason, the requested relief—a declaration that Missouri's CANRB procedures violate due process—would not redress any future injury.  That is, preventing Defendants from enforcing procedures as to "pre-CANRB hearing discovery and hearing procedure" would not preclude Cook from making a preliminary finding of neglect and thereby causing the same injury to Plaintiffs' reputation.  To the extent Plaintiffs allege a future investigation could result in not only a preliminary finding of neglect by Cook but also an affirmance of this finding by the CANRB, this argument requires even more speculation and necessarily fails.

Plaintiffs argue in the alternative that they have standing under the mootness exception doctrine because the controversy is "capable of repetition, yet evading review."  *Roberts v. Norris*, 415 F.3d 816, 819 (8th Cir. 2005.)  Plaintiffs' argument in unavailing.  Defendants do not argue, and this Court does not find that Counts I or II are moot.  The exception to mootness for disputes capable of repetition yet evading review does not operate to confer standing in this case where Plaintiffs lacked standing at the onset.  *See Friends of the Earth, Inc.*, 528 U.S. at 191 ("if a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum").

Thus, the Court finds that Plaintiffs lack standing to bring Count I.

### 2.  Count II

17

In Count II of their Complaint, Plaintiffs seek a preliminary and permanent injunction against CD "on the same grounds as stated in Count I."  (Doc. 1 at 25.)  Plaintiffs seek to enjoin CD "from enforcing unconstitutional procedures as to pre-CANRB hearing discovery and hearing procedure."  *Id.* at 26.

As previously noted, Plaintiffs have also moved for a preliminary injunction to enjoin CD during the pendency of this litigation from enforcing the Central Registry statutory and regulatory process without requiring the CD to grant accused parties the following procedural due process rights:  (1) right to obtain all evidence, including disclosure of CD's entire file, and to compel production of all evidence if necessary, with some process to compel production; (2) right not to be charged money for disclosure of CD's evidence; and (3) right to cross-examine CD's witnesses where there are conflicting narratives of the truth, in light of an alleged perpetrator's interest in avoiding "stigma plus" placement on the Central Registry.   (Doc. 13.)

To establish standing for their claim for injunctive relief asserted in Count II,  Plaintiffs must show the same elements required for their declaratory relief claim, including redressability. *See Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 956 (8th Cir. 2015) (citing *Lujan*, 504 U.S. at 560.)   The Court has found that Plaintiffs have not sufficiently alleged that they suffered an injury in fact or will suffer an injury in fact in the immediate future that is redressable by a favorable decision.  Thus, Plaintiffs lack standing to bring a claim for a preliminary or permanent injunction.  *Id.* at 560-61.

Accordingly, Count II is dismissed.  Additionally, Plaintiffs' Motion for a Preliminary Injunction will be denied as moot.

**B.  Merits of Counts I, II, and IV**

Alternatively, had Plaintiffs established standing, Plaintiffs fail to state causes of action for violations of procedural and substantive due process.

To state a claim under 42 U.S.C. § 1983, plaintiff must show a deprivation of a right, privilege, or immunity protected by the Constitution. *Meyer v. City of Joplin,* 281 F.3d 759, 761 (8th Cir. 2002).

A claim for violation of due process may be procedural or substantive. *Creason v. City of Wash.*, 435 F.3d 820, 824 (8th Cir. 2006). A procedural due process violation requires the following elements: (1) a protected life, liberty, or property interest; (2) the deprivation of the same; and (3) the state's failure to provide adequate procedural rights before impinging upon the protected interest. *Mulvenon v. Greenwood*, 643 F.3d 653, 657 (8th Cir. 2011). A substantive due process violation requires the following elements: (1) violation of a constitutional right; and (2) that the state officials' conduct in violating the right "was shocking to the contemporary conscience." *Flowers v. City of Minneapolis, Minn.*, 478 F.3d 869, 873 (8th Cir. 2007).

Whether the due process violation alleged is procedural or substantive in nature, the threshold question is whether the right at issue is protected by the due process clause. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); U.S. Const. amend. XIV ("[n]o [s]tate shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any [s]tate deprive any person of life, liberty, or property, without the due process of law; nor deny to any person within its jurisdiction the equal protection of the laws").

Plaintiffs first argue that Spring Cook's finding of child neglect was sufficiently stigmatic

as to entitle them to the minimum requirements of procedural due process.  They assert that they

have a liberty interest in being free from State interference in their parenting of their children

absent a reasonable suspicion for abuse or imminent danger of abuse.  Plaintiffs claim that once a

CD official such as Spring Cook "makes an official finding of child neglect against them," then

they are entitled to additional procedural due process.  (Doc. 36 at 10.)  They contend that the

constitutional gravamen of a procedural due process claim is not the deprivation itself, but the

lack of due process.

　　　　"In *Paul v. Davis,* the Supreme Court made clear that injury to reputation alone is not

sufficient to state a § 1983 claim."  *Jones v. McNeese*, 746 F.3d 887, 898 (8th Cir. 2014)

(citing *Paul v. Davis*, 424 U.S. 693, 712 (1976)).  However, "reputational harm coupled

with 'some more tangible interest such as employment,' can together be 'sufficient to invoke the

procedural protection of the Due Process Clause,'" this is known as the "stigma-plus"

test.  *Id.* (quoting *Paul*, 424 U.S. at 701).  According to the Court, the "plus" element of the

stigma plus test is where:

> As a result of the state action complained of, a right or status previously
> recognized by state law was distinctly altered or extinguished.  It was this
> alteration, officially removing the interest from the recognition and protection
> previously afforded by the State, which we found sufficient to invoke the
> procedural guarantees contained in the Due Process Clause of the Fourteenth
> Amendment.

*Paul*, 424 U.S. at 711.  The Court held that Paul's action in branding Davis as a known shoplifter

in a flyer, despite the harm to Davis' reputation, did not alter or extinguish any right or status

Davis enjoyed under state law.  *Id.* at 711-12.  Thus, Davis was not deprived of a liberty or

property interest protected by the Due Process Clause.  *Id.* at 712.

　　　　The *Jamison* Court applied *Paul* in holding a Central Registry listing met the "stigma

plus" test to implicate an individual's constitutionally protected liberty interest insofar as it

20

essentially barred plaintiffs from working in their childcare profession. 218 S.W.3d at 406-08.

The Court, however, found additional procedural protections were not required at the pre-

deprivation hearing before the CANRB. *Id.* at 412. Citing the State's interest in protecting

children and the fact that plaintiffs may seek de novo judicial review, the Court found the

"protections given at the CANRB hearing are sufficient." *Id.* at 415.

Here, Plaintiffs have not alleged that a right or status was altered by Spring Cook's

preliminary finding of neglect. Cook's finding was confidential under Missouri law, and

Plaintiffs do not claim Cook published the finding. Although Plaintiffs' fear of losing their

abilities to work in their fields of law enforcement and teaching due to placement on the Central

Registry was reasonable, they were not placed on the Central Registry. Because the CANRB

found the allegations of neglect were unsubstantiated, Plaintiffs were never placed on the Central

Registry, and no other adverse consequences occurred.

It is undisputed that Plaintiffs have a constitutionally protected liberty interest in being

free from State interference in their parenting of their children. *See Troxel v. Granville*, 530 U.S.

57, 65 (2000) ("the interest of parents in the care, custody, and control of their children—is

perhaps the oldest of the fundamental liberty interests recognized by this Court"). That interest,

however, "is limited by the compelling governmental interest in the protection of minor children,

particularly in circumstances where the protection is considered necessary as against the parents

themselves." *Thomason v. SCAN Vol. Services, Inc.*, 85 F.3d 1365, 1371 (8th Cir. 1996). As

such, parents do not have a constitutional right to be free from child abuse investigations. *Id.*

The Court finds Plaintiffs have failed to allege a sufficient basis to establish Defendants

violated a liberty interest. The Complaint reveals that Plaintiffs' minor child was sexually

abused by an adult, and that prior to the abuse, he had been groomed through the use of a

21

smartphone app.  Spring Cook received a child neglect hotline call regarding Plaintiffs' minor son, which required Defendants to conduct an investigation.  While the investigation was being conducted, Plaintiffs learned that their minor son had had sex with another adult and that this adult had also been contacting the minor son on social media.  Plaintiff Father admits he confronted the adult with his daughter and her friend present, which resulted in a physical altercation.  Spring Cook found that Plaintiffs were neglectful in failing to supervise their child. (Doc. 13-2.)  When Cook notified Plaintiffs of her finding, she informed them of their rights for administrative and judicial review.  *Id.*  Plaintiffs successfully exercised these rights by seeking review before the CANRB, resulting in a reversal of Spring's preliminary finding after a hearing.

Assuming the allegations in the Complaint are true, they do not support a violation of Plaintiffs' liberty interest.  Plaintiffs do not dispute the facts cited by Cook as a basis for her finding of neglect.  Instead, they disagree with her conclusion that their actions were neglectful. In light of the admitted facts that Plaintiffs' minor son had been a victim of sexual abuse on multiple occasions, Defendants had a compelling governmental interest in the protection of Plaintiffs' minor son.  Plaintiffs successfully challenged Cook's preliminary finding.  Contrary to their argument, the fact that other agencies did not press charges or find Plaintiffs were neglectful has no bearing on Cook's *preliminary* finding.  Notably, Plaintiffs do not allege Defendants ever removed any of their children from their home for any length of time during or after the investigation.

Thus, they have not shown that Defendants violated a protected liberty interest by interfering with the custody or care of the children.  Because Defendants did not violate a constitutionally protected liberty interest, the Court need not address what process was due. Thus, the procedural due process claims alleged in Counts I, II, and IV will be dismissed.

Similarly, Plaintiffs' substantive due process claim against Defendant Cook asserted in IV necessarily fails due to Plaintiffs' failure to show a deprivation of a protected liberty interest. Thus, Count IV will also be dismissed.

### C.  Count III

In Count III, Plaintiffs assert a First Amendment retaliation claim against Spring Cook pursuant to § 1983.  Specifically, Plaintiffs allege the following: (1) Cook investigated and made findings of parental neglect against Plaintiffs; (2) Plaintiff Father engaged in a protected First Amendment activity in making allegations against Scott County and its Sheriff, and Plaintiff Father's allegations played a part in Cook's decision to investigate and make findings of parental neglect against Plaintiffs; (3) Cook was acting under color of law; (4) Cook took adverse action against Plaintiffs that would chill a person of ordinary firmness from continuing in the activity; (5) the adverse action was motivated at least in part by the exercise of the protected activity; and (6) Plaintiffs were damaged.

Defendants argue that Count III should be dismissed because Plaintiffs fail to meet any of the elements of a First Amendment retaliation claim.

Retaliation by a government actor in response to an exercise of free speech does qualify as a basis for § 1983 liability.  *See Nieves v. Bartlett*, ––– U.S. ––––, 139 S. Ct. 1715, 1722, 204 L.Ed.2d 1 (2019); *Pendleton v. St. Louis Cnty.,* 178 F.3d 1007, 1011 (8th Cir. 1999).  To successfully plead a First Amendment retaliation claim, a plaintiff "must show (1) that he engaged in a constitutionally protected activity; (2) that the defendant took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated in part by [the plaintiff's] exercise of his constitutional

rights." *Scheffler v. Molin,* 743 F.3d 619, 621 (8th Cir.2014); *see also Zutz v. Nelson,* 601 F.3d 842, 848-49 (8th Cir.2010); *Okruhlik v. Univ. of Arkansas,* 395 F.3d 872, 878 (8th Cir. 2005).

First, Plaintiffs must plausibly plead that they engaged in a protected activity.  Plaintiffs allege that, "making a civil claim against a government entity related to a matter of public concern—that is, the sexual abuse of a minor son by an on-duty, uniformed police officer—is surely a First Amendment-protected activity."  (Doc. 36 at 22.)  Defendants argue that Plaintiffs' allegations are insufficient because they fail to indicate the specific claims made that would provide a motive for Cook to retaliate.

It is established law that prison officials may not retaliate against an inmate for filing legal actions in the exercise of his constitutional right of access to the courts.  *Goff v. Burton*, 7 F.3d 734, 736 (8th Cir. 1993); *Sanders v. St. Louis Cnty.*, 724 F.2d 665, 666 (8th Cir. 1983). This concept is not exclusive to the formal filing of lawsuits by prisoners, as "criticism of public officials lies at the very core of speech protected by the First Amendment."  *Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002).  *See United States v. Catlett*, 584 F.2d 864, 867 (8th Cir. 1978) (referring to "first amendment right to protest government ... tax policies"); *Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1000 (D. Minn. 2014) ("The First Amendment protects 'a significant amount of verbal criticism and challenge' directed at the government and its officials.") (quoting *City of Houston v. Hill*, 482 U.S. 451, 461 (1987)); *see also Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003) (case involving retaliatory parking tickets issued to plaintiff who complained to city and state officials about failure to enforce ordinance was sufficient to go to jury).

The Complaint alleges that Plaintiff Father made allegations against Scott County and its Sheriff related to the sexual abuse of his son by a Scott County Sheriff's Deputy.  Specifically,

24

on September 7 and 17, 2018, Plaintiff Father, through counsel and as a next friend of his minor

son, "asserted but did not file claims against the County related to the underlying occurrence."

(Doc. 1 at 4.)  Plaintiffs state that these claims were resolved.  *Id.*  Plaintiffs allege that Scott

County Sheriff's deputies routinely work "hand-in-glove" with Spring Cook.

The Court finds that Plaintiffs have sufficiently alleged that they engaged in a

constitutionally protected activity.  Defendants raise questions about the specific claims and

statements made by Plaintiffs against Scott County that would support Spring Cook's motive to

retaliate against Plaintiffs.  These are issues better addressed after discovery has been conducted.

At this stage, the "plausibility standard requires a plaintiff to show at the pleading stage that

success on the merits is more than a sheer possibility," it is not a "probability

requirement."  *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir.2009)

(citing *Iqbal,* 129 S.Ct. at 1949).

Plaintiffs must next allege that the defendant took adverse action against them that would

chill a person of ordinary firmness from continuing in the activity.  Defendants argue that "how

or why the plaintiffs would be chilled by Ms. Cook's alleged actions is not supported by any

allegations of fact."  (Doc. 12 at 51.)  The Complaint alleges that Cook's finding of parental

neglect constitutes an adverse action.  The "ordinary firmness test" requires only a small effect

on the freedom of speech, as "there is no justification for harassing people for exercising their

constitutional rights, it need not be great in order to be actionable."  *Garcia*, 348 F.3d at 728-29

(plaintiff's receipt of $35.00 in parking tickets after she complained about city's failure to

enforce sidewalk ordinance was sufficient to establish retaliation that would chill the speech of a

person of ordinary firmness.)  The undersigned finds that Cook's preliminary finding of parental

neglect was sufficiently adverse to chill a person of ordinary firmness.

Third, Plaintiffs must allege that the adverse action was motivated in part by Plaintiffs' exercise of their constitutional rights.  Defendants, relying upon *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014), argue that Plaintiffs failed to allege specific facts to establish a plausible claim that their protected activities were a "substantial 'but for' cause of Ms. Cook's decision." (Doc. 12 at 52.)  Defendants acknowledge that *Peterson* involved a retaliatory arrest and held that, "[i]n retaliatory arrest cases, we have identified a fourth prong: lack of probable cause or arguable probable cause." *Id.*  Defendants argue that this Court should nonetheless apply this principle and require Plaintiffs to show that Cook lacked "reasonable suspicion of child abuse/neglect."  (Doc. 12 at 52.)  Plaintiffs respond that *Peterson* does not apply.  In the alternative, Plaintiffs argue that they sufficiently alleged lack of probable cause.

The Complaint alleges the following facts supporting the adverse action was motivated by Plaintiffs' exercise of their constitutional rights:  Defendant Cook arrived at Plaintiffs' home with a Scott County Deputy JO to investigate an alleged child neglect hotline call regarding Plaintiffs' minor son approximately seven weeks after Plaintiff Father asserted claims against Scott County but before the claims were resolved; Defendant Cook and the minor son's abuser share a last name; Plaintiffs, by letter from their counsel, requested that Cook recuse herself from investigating Plaintiffs but Cook did not recuse herself; during a call out to the family home, Spring Cook made a comment to Plaintiff Father about "getting" his "POST"[1] license; Spring Cook reviewed her own investigatory work as part of the administrative review triggered by Plaintiffs' appeal of her initial finding, despite Plaintiffs' request that she recuse herself; the JO conducted his own investigation and found no evidence to support an allegation of parental

---

[1]"POST" is an acronym for Peace Officers Standards and Training, and is a program created by state law.  *See, e.g.*, Mo. Rev. Stat. §§ 590.010(4), 590.020–.050.)

neglect; the MSHP never charged Plaintiffs with a crime; the CANRB held that the findings of neglect were unsubstantiated; Spring Cook contacted the FBI after the CANRB did not substantiate her finding as retaliation against Plaintiffs; and the FBI closed its investigation for lack of probable cause for the allegations.

Plaintiffs have plausibly alleged the required causal connection between their protected activity and Cook's decision to investigate and make a preliminary finding of child neglect. At the pleading stage, Plaintiffs need only allege that Defendant's "adverse action was motivated *at least in part* by" Plaintiff Father's protected activity. *Id.* at 808 (emphasis added). Plaintiffs' Complaint contains ample allegations of retaliatory motive.

The Court is not persuaded that Plaintiffs must plead and ultimately prove that Defendant lacked probable cause for her finding of neglect. Nonetheless, the Court finds that Plaintiffs have sufficiently alleged lack of probable cause. Cook's investigation was initiated as a result of Plaintiffs' minor being the victim of sexual abuse by an adult. The Plaintiff Parents, however, were not the abusers. Spring's finding of neglect were based on the facts that Plaintiffs allowed their sixteen-year-old son to have a smartphone with access to the internet and drive a vehicle; the minor son was permitted to go on an age-appropriate date with another minor across state lines; and Plaintiff Father confronted an alleged abuser and was assaulted but did not report the incident to law enforcement. Plaintiffs allege that the CANRB found Cook's findings of neglect were unsubstantiated, the JO found no evidence to support an allegation of parental neglect, the FBI closed its investigation of Plaintiffs for lack of probable cause, and the MSHP never charged Plaintiff with a crime. When the allegations in the Complaint are accepted as true and all reasonable inferences are drawn in favor of Plaintiffs, Plaintiffs have sufficiently pled the absence of probable cause.

In sum, Plaintiffs have plausibly alleged a First Amendment retaliation claim. Defendant's arguments to the contrary target the causal connection between Plaintiffs' protected activity and Defendant's allegedly retaliatory action.  Causation, however, is a fact-intensive issue, and Defendant's arguments rely principally on materials which cannot be considered, at this stage, to dispute the well-pled allegations of Plaintiffs' Complaint.  Thus, the Court denies Defendant's Motion to Dismiss as to Count III.

### D.  Absolute and Qualified Immunity

Defendants next argue that Spring Cook is entitled to absolute and qualified immunity from liability on Counts III and IV.  Because the Court has already found that Count IV fails to state a claim, the Court will only discuss Count III.

### 1.  Absolute Immunity

"Absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity."  *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976) ).  It "protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case 'insofar as that conduct is intimately associated with the judicial phase of the criminal process.'"  *Sample*, 836 F.3d at 916 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)).  Thus, "[p]rosecutors enjoy absolute immunity in their review of and decisions to charge a violation of the law," *Sample*, 836 F.3d at 916 (citing *Imbler*, 424 U.S. at 420-27), and they are entitled to immunity for the decision to bring charges "whether [they have] probable cause or not[,]" *Saterdalen v. Spencer*, 725 F.3d 838, 843 (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993)).

"However, purely administrative or investigative actions that do not relate to the initiation of a prosecution do not qualify for absolute immunity." *Winslow v. Smith*, 696 F.3d 716, 739 (8th Cir. 2012) (quoting *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006)). In *Buckley v. Fitzsimmons*, the Supreme Court explained that "[t]here is a difference between the advocate's role in evaluating evidence ... as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." 509 U.S. 259, 273 (1993). It is "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer" that he is not entitled to absolute immunity. *Id.* Therefore, there is a distinction between a police officer's initial collection of evidence and a prosecutor's "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial...." *Id.* The latter function is entitled to absolute immunity. *See Forrester v. White*, 484 U.S. 219, 229 (1987) (The court must look to "the nature of the function performed...."). Absolute immunity has been applied to individuals other than prosecutors if those individuals are participating in court proceedings. *See, e.g. Thomason*, 85 F.3d at 1373 (Social workers "absolutely immune from liability for their participation in the ex parte proceedings in state court that led to the award of temporary protective custody of [the child] to the state").

Here, Plaintiffs challenge Spring Cook's actions in initiating an investigation and making a preliminary administrative finding of child neglect. Defendants have cited no authority for extending absolute immunity to such administrative investigations. Thus, Cook is not entitled to absolute immunity on Count III.

## 2. Qualified Immunity

Defendants next argue that Spring Cook is entitled to qualified immunity on Count III.

Qualified immunity from personal damage liability "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). "Qualified immunity attaches when an official's conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S.Ct. 548, 551 (2017) (quotation omitted). It "protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotation omitted).

As previously discussed, construed in the light most favorable to Plaintiffs, Count III states a plausible claim of retaliation in violation of the First Amendment against Defendant Cook. Thus, the Court next determines whether the law was clearly established.

The Supreme Court has repeatedly warned that "clearly established law should not be defined at a high level of generality ... [but] must be particularized to the facts of the case." *White*, 137 S.Ct. at 552 (citing prior cases). Although the Supreme Court "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the ... constitutional question beyond debate" at the time the defendant acted. *White*, 137 S.Ct. at 551 (quotation omitted); *see Mullenix*, 136 S.Ct. at 308; *Reichle v. Howards*, 566 U.S. 658 (2012) ("[T]he right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause," *id*. at 665; qualified immunity applied to protective service officers as the right was not clearly established, *id*. at 670).

Defendants argue that *Jamison* is the clearly established law in Missouri on the constitutionality of Missouri's CANRB procedures. Because Cook followed these procedures,

Defendants contend that she must be accorded qualified immunity from liability for damages. They further argue that Cook's decision to issue the preliminary finding was objectively reasonable given the facts and in light of the CD's role in conducting child abuse and neglect investigations.

Count III does not challenge the procedures Cook followed, nor does it allege Cook made a mistaken judgment.  Instead, the crux of  Plaintiffs' claim is Cook's retaliatory intent in making her determination.  "Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001).  The retaliatory conduct here—the preliminary finding of neglect—is not the constitutional violation; the violation "lies in the intent to impede access to the courts." *Id.* (citing *Madewell v. Roberts,* 909 F.2d 1203, 1206-07 (8th Cir. 1990)).

The question, therefore, is whether a reasonable official might have believed that it was permissible to make findings of child neglect in retaliation for parents making claims against county officials related to the sexual abuse of their child.  Under clear Eighth Circuit precedent, the answer is no.  *See Goff*, 7 F.3d at 736 ; *Naucke*, 284 F.3d at 927-28; *Catlett*, 584 F.2d at 867; *Garcia*, 348 F.3d at 729.

Because Plaintiffs successfully allege a violation of a constitutional right, and the right at issue was "clearly established" at the time of the alleged misconduct, Defendant Spring Cook cannot establish qualified immunity "on the face of the complaint." *Bradford v. Huckabee,* 330 F.3d 1038, 1041 (8th Cir. 2003).  Thus, the Court will not dismiss Count III.

### E.  Count V

In Count V, Plaintiffs assert a state law malicious prosecution claim against Spring Cook

for investigating and making findings against Plaintiffs for child neglect

Defendants argue Count V should be dismissed for the following reasons: Defendant Cook is entitled to official immunity; Cook is absolutely immune from liability for malicious prosecution; Count V fails to plead the elements of a claim for malicious prosecution; or, in the alternative, the Court should decline to exercise its supplemental jurisdiction.

To prevail on a malicious prosecution claim in Missouri, a party must prove six elements: (1) commencement of an earlier suit against the party; (2) instigation of that suit by the adverse party; (3) termination of the suit in the party's favor; (4) lack of probable cause for filing the suit; (5) malice by the adverse party in initiating the suit; and (6) damage sustained by the party as a result of the suit. *State ex rel. O'Basuyi v. Vincent,* 434 S.W.3d 517, 519 (Mo. banc 2014). Malicious prosecution actions are not favored in the law as public policy supports uncovering and prosecuting crime. *Sanders v. Daniel Int'l Corp.,* 682 S.W.2d 803, 806 (Mo. banc 1984). As such, courts require strict compliance with the requisite elements. *Edwards v. Gerstein,* 237 S.W.3d 580, 583 (Mo. banc 2007).

Missouri courts have not recognized a cause of action for malicious prosecution arising outside of judicial proceedings. *See, e.g., Holland v. Healthcare Servs. of the Ozarks*, 347 S.W.3d 166, 168 n.2 (Mo. Ct. App. 2011) ("No Missouri court has recognized a claim for malicious prosecution arising from an administrative proceeding. The underlying proceeding has always been either a civil or criminal lawsuit."); *Teefey v. Cleaves*, 73 S.W.3d 813, 816 (Mo. Ct. App. 2002) ("Were we to pass favorably on [plaintiffs'] cause of action, we would be the first Missouri court to apply a malicious prosecution claim to an administrative proceeding. No Missouri court has recognized the claim in this context.").

This Court,[2] in *Abernathy v. White*, 4:19-CV-00009-NAB, 2019 WL 4750247, at *3 (E.D. Mo. Sept. 30, 2019), recently considered whether a city alderman stated a claim for malicious prosecution arising from impeachment proceedings initiated by the city.  Judge Baker held that the plaintiff failed to state a claim, noting that the "Court is not included to supplant the judgment of the Missouri courts and extend the law in the manner required to sustain Plaintiff's claim." *Id.*

The undersigned declines to extend Missouri malicious prosecution actions to administrative proceedings in the absence of any authority to do so.  Thus, Count V fails to state a claim for which relief can be granted, and will be dismissed.

### F.  Plaintiffs' Motion for Leave to File a Sur-Response

Plaintiffs have requested the opportunity to file a Sur-Response in opposition to the Defendants' Motion to Dismiss.  The Defendants oppose the Motion.

Eastern District of Missouri Local Rule 4.01(C) states that additional memoranda following a reply may be filed only with leave of Court.  Insofar as the above analysis has resulted in a favorable outcome for the Plaintiffs as to Count III, Plaintiffs' request to file a Sur-Response is moot.  As to their substantive due process claim, Plaintiffs wish this Court to consider an out-of-district decision that is not binding authority on this Court.  The undersigned has found that Plaintiffs' substantive due process claim against Defendant Cook necessarily fails because the undisputed facts do not support a violation of Plaintiffs' liberty interest.  As such, the Court declines to entertain Plaintiffs' Sur-Response.

Accordingly,

---

[2] The Honorable Nannette A. Baker, United States Magistrate Judge.

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. 11) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Counts I, II, IV, and V are **dismissed**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Preliminary Injunction (Doc. 13) is **denied as moot**.

**IT IS FURTHER ORDERED** that Motion for Leave to File a Sur-Response in Opposition to Defendants' Motion to Dismiss (Doc. 44) is **denied as moot**.

*s/Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of June, 2021.

34